With Computers, LLC v. Altec Industries, Inc Mr. Edmonds, please proceed. Thank you, Your Honor. It may please the Court, John Edmonds, on behalf of the appellant Clear With Computers, LLC. The things I'd first like to focus the Court on, because I know every appeal of a 101 motion gets into abstract idea and inventive step or inventive or meaningful limitations. What I'd like to talk upon first is some errors in the District Court's opinion that compel reversal over and above those disagreements I just mentioned. In first part, the District Court, in its order, said it considered individually that the elements didn't add enough for the second prong of Alice and Mayo. That's not a proper analysis. Under Alice and Mayo, the Court should have considered those elements, should have considered the claim as a whole. And I'm quoting from A10 from the Court's order. It said, considered individually they did not add enough. That's sufficient error, we believe, for reversal right there. Secondly, and it's important to note that the procedural stage of this was on Rule 12B, Motion to Dismiss. We've had several of those, right, where we've done applications of the new Alice or even pre-Alice analysis on Motions to Dismiss. And a number of times, is that right, that we've found that that's, the claims are clear enough and that that's proper to do under 12B. This Court has done that in the past. What I would say that one thing that distinguishes this case from all those cases is that the 739 patent was upheld in front of the same court or in the same district as being not obvious by a jury. Upheld on Jamal. It was affirmed by this Court. Cert was denied by the Supreme Court. Was that before Alice? Was that before Alice? I just don't recall. It was affirmed. I don't believe it was a materially different analysis. Do you think Alice can change the analysis that was used at this court on 101? Alice definitely can change the analysis, but the point I'm making is that the court, this is on a 12B motion to where the court accepts, is required to accept our version of the facts, and the court considered but didn't give proper, well, it mentioned this finding, but it just didn't give it any weight. And that's improper under 12B. The history of the 739 patent is a factor that itself should compel reversal on 12B. If the court wants to consider the facts. You're saying a lot of things, but I don't really understand what you're saying, so let me give it a try. You'll tell me if I've got it. You're saying the 739 patent already withstood an entire validity challenge prior art based, 102, 103 type thing, all the way through appeal, jury verdict, all the way through Jamal appeal, right? Yes. And so what you're saying is to the extent that the second prong of Alice, in order to render something unpatentable, directed to unpatentable subject matter, ineligible matter, it has to not only be an abstract idea, but have no inventive step. And you're saying there is a strong factual predicate already here for the fact that this does have an inventive step because it withstood all of these challenges on 102 and 103 already. Inventive step or something more, however you want to phrase it, but yes. That's your argument, right? That is our argument, yes. That is my argument. Thank you. Everybody fights me, even when my questions are friendly. I don't understand. Thank you. Sorry. No, but it's in the context of that this is on a motion to dismiss too when the facts should be viewed most favorably to clear with computers. Third, the court's opinion is really devoid of factual findings that would support its conclusions, and we think that that's error that really precludes a meaningful review by this court. There are some conclusions about conventional and conclusions about other things, but the facts aren't there to support them. I think some good evidence of that is that if you look, we pointed out that in the brief that was filed by appellees, they tried to bring in some new evidence from an article and from a book that weren't even before the district court to try to bolster that because the facts simply just aren't there. In addition, the district court didn't address the issue of preemption, which we think is just error and also compels reversal. It was raised by clear with computers in its briefing and argument. It just wasn't addressed in the court's opinion, and we believe under Mayo and Alice, all the decisions that are in play today that you have to address preemption, and that must be addressed, and that compels reversal as well. In addition, the district court didn't address the transformation prong of the machine or transformation test. It just didn't do it. The appellees said it was waived. Why don't you try and find faults that the district court did do? Okay. Those are things we think that compel error. The problem is the district court didn't give proper consideration because it ignored so many things. It didn't apply the test correctly. But in terms of on the issue of an abstract idea, the district court gave an overgeneralized notion that was erroneous when it said creating a customized sales proposal for a customer. That just ignores the gist especially of Claim 1 of the 739 patent where you have elements like automatically selecting, integrating into a single composite visual output, and the involvement of an active database and a static database. The court just didn't give proper consideration of the term as a whole when it came up with this overbroad notion of an abstract idea, which inevitably led it down the improper or erroneous path to finding these claims invalid under 101. Also, the court's characterization, it seems more directed at Claim 61 of the 776 patent and really seems to ignore Claim 1 of the 739 patent, which has more meat to it than its sister claim. As far as the second part of Mayo in terms of something more, again, the court just seems to have ignored or not properly considered the meaningful limitations in these claims. In part, it seems to be based upon a court's just acceptance of the arguments of the appellees, which were just arguments, there was no evidence to support them, that this was all conventional or somehow prevalent when it just simply was not. The problem that was meant to be solved here was that there were generic proposals. Generic proposals are one size fits all, and they don't really please anyone. They're not very effective. This is a 1992 priority date for this patent. I think that's something the court has to consider when you consider what's conventional in 1992 versus what's conventional in 2016. The best that the district court could point to was a file of static pictures and a Rolodex, and that's very far afield from the claimed invention here and these meaningful limitations that just simply were not given proper consideration by the court. With respect to the 739 patent, the automatically selecting is something that distinguishes, is inventive. The single composite visual output is something that's inventive, and again, the active and static databases and the dynamic building are all, dynamic building of the template and dynamic filling in of the template are all things that are inventive that just simply weren't, they didn't make it into the district court's statement of abstract idea, and they just simply weren't properly considered by the district court when it came to step two of Alice. Again, one problem is there's not, the district court isn't citing evidence to support any findings, and so this court's somewhat at a loss to find something to affirm it on. It just concludes something as well understood a routine, but the only thing that's cited again is static pictures. And the way, as far as overcoming this problem in the prior art, by automatically selecting these elements in response to customer questions and putting them into a single composite outlook from these active and static databases and from dynamically building the template and dynamically building the proposal, now you have a tailored presentation that's much more effective for the customer. This isn't a situation to where before computers, we just added a computer to it because computers were around in 1992. This is simply something wasn't done until it was invented by the patentee. So that— Are you saying that in the entire history that there weren't people out there that were sitting down with customers for anything and saying, what do you want, and then going back and coming back with a proposal that was tailored to those specific answered questions? The situation the district court saw was that you'd select from generic pictures. What I'm talking about, and especially with respect to Claim 1 of 739, is that the automatic selecting and this single composite visual output is not something that we see in the prior art. And this dynamic template and dynamic building are not something that we see in the prior art that just wasn't done. Now, somebody might say, we're going to take a lot of effort, and we're just going to go get a model, and we're going to take a picture out in the setting they like, and then we're going to do it that way. But that just simply wasn't done because it's just simply not practical to do it, and it wasn't sensible to do it even though we had computers. Until this invention that came up with this— But this is your problem, is the two words you just used, that it wasn't sensible and wasn't practicable. Just because a computer makes something now doable because of computing speed doesn't somehow transform what's abstract into an otherwise patent-eligible idea. But it's not just speed. It's not just speed. This is a transformative claim in that it's doing something very different. It is making an automatic selection, and it's doing it into a single composite visual output from these active and static databases. That just simply is not something that even in the prior—you just can't do those things without a computer. You can't accomplish this kind of customization without a computer. That's our position. Okay, well, let's save the rest of your time for rebuttal. Thank you, Your Honor. Is it Ms. Doan? Yes. Please proceed. Good morning. Appalooza Court. Jennifer Doan for the Appalooze Alltech, Bad Boy, Volvo, and the Men's Warehouse. This is a simple case. This case involves a fundamental business practice of creating customized sales proposals. It is equivalent to target marketing. And this court should affirm the district court's minute order of file judgment for three reasons. One is because it is an abstract idea. The second is because the limitations do not transform this case into some type of patent-eligible subject matter. And then three, what the plans are attempting to do here is to preempt the entire customized customer proposal on computers, and that's what they're trying to take over the entire market with that, and that should not be good. Can you explain—I just don't understand. So the dynamic template? Yes, Your Honor. What does that mean? What's it doing in the claims? Well, the dynamic template is there's a template that provides an environment, and then there's a picture that goes on top of it. So in response to the— So you want to get a car and you want to show it, I don't know, outside the sports stadium or on the beach? Sure, on the beach, on the sports stadium, on the mountain, in the city. You pick an environment, you pick a picture, and then you have text with it. So part of this is it's all done dynamically and automatically, and there isn't a database with respect to claim number one of the 739, which is static, and there's a database that is active. The active database can contain, for example, customer information, your address, your phone number, things that change. The static database contains pictures that are static pictures. So we have a mountain, a beach, and a city, and we have a black car and a blue car, or we may have the same dress, and the same dress appears in blue or appears in polka dots, or we have men's shoes, or we have men's jackets, and you have different colors of men's jackets. But the patent—both claims of the two patents basically say that there is a series of questions that the conjurer, the decision maker, the series of questions asked of the customer, and the customer answers those series of questions, and then based upon only one answer to those questions, one answer, there is a picture, an environmental picture returned. There is a picture on top of the environment returned, and then there is a text message that is returned. So you could only answer one binary question of, for example, the argument we made before the district court was, are you green-friendly? Do you want to return a Prius on a customer proposal for you, as opposed to a Ford F-150? Or it could be that, do you like a blue suit, or do you like a gray suit better? And if you say gray, I show you in gray. Graduating from high school, I'll show you in gray. Graduating from law school, I'll show you in a gray suit at a wedding, and different environments in the background, each of which has the customer name on the front. There's various iterations of this. This patent is no more than equivalent to a Chinese menu where you may pick from column A, one dish. Column A changes daily. Column B and column C are static every day. You pick one dish from each. I put it on a plate, and I give it to you. That's exactly what this patent is calling for. And because of this abstract idea of customer sales proposals, the limitations do not make it into an inventive subject matter. I mean, this is the classic Alice case where you have an abstract matter on a computer. There's nothing about these two claims that say somehow what makes it different on a computer. They just say, quote, electronically, quote, dynamically, quote, automatically, and that's it. And so because of that, Your Honor, it falls under Alice and should be held invalid under 35 U.S.C. 101. I could respond to Mr. Edmond's questions if the court has any further questions on those with respect to 12B. The court has decided this issue multiple times here now with respect to ultra-martial content extraction and Internet patents. This was decided almost a year after Alice. It looks like the Clear With Computers verdict against Hyundai came down in February of 2013, and then the Supreme Court came out with the Alice opinion in June of 2014. So the law has— The Hyundai case, that's the jury case, upheld it against non-101 challenges? Yes, Your Honor. 101 was not raised there. It was 102 for anticipatory prior art and 103, a combination for obviousness. Those were argued before this court, as was 112, written description. 101 was never raised. And as this court knows, you know, every defendant has an opportunity to raise invalidity again. So just because there was a piece of 102 art, say, argued on anticipation with respect to that jury, doesn't mean in the next jury with a different defendant you couldn't raise another piece of prior art with 102. Why does that evidence or that verdict not tend to suggest that if you actually wanted to find evidence in the world of what people were doing, which seems at least relevant to pieces of the Alice analysis, you might not be able to find it to cover this claim? Well, the Myriad Court, as you know, Your Honor, basically said you shouldn't read in 101 into the 102 and 103 analysis. They are different defenses. The Mayo Court. I'm sorry, the Mayo Court, the Myriad Judiciary. Yes, Your Honor. And it's a totally different question with respect to— Well, totally different is different. I mean, I thought that Mayo said these actually do have some overlap, but we're not going to drain 101 of content just because there's a fair bit of overlap with 102 and 103, and maybe even 112 there nevertheless remains a function. But the conventionality aspect of 101 has to do with what people were doing in the world, which is also highly relevant to 102 and 103. So, I mean, this was Hyundai, I guess, was the defendant. Is that right? It was the defendant, Your Honor. So they had a pretty strong incentive to go out and find prior art that says people were doing this or they were doing things sufficiently close that when you put it together it's obvious to do this and couldn't do it. And they could. And we don't know from the jury verdict exactly was a certain element missing that the claims were raised. There was a 739 patent and there was another patent raised in the case that's not before us here today. But we don't know why the jury made the decision. All we know is that the jury rejected the infallibility analysis and whether certain particular elements of the claims were raised were not found in the prior art or whether the combination the jury didn't find persuasive or perhaps they didn't like the lawyers on the team and they really liked the plaintiff. As you know, juries make decisions on lots of different reasons. But we don't have that analysis here before us. What we do know is the jury did not decide, nor was it before it. We upheld that, right? You did uphold it. We probably didn't uphold it on the ground that that lawyer was worth disliking. I suspect we looked at some sufficient basis of evidence. I would hope it would be based on the long evidence, yes, Your Honor. But what we do know is that that jury did not decide whether these claims were abstract or not. And we do know that the law has substantially changed since then. And so what we do know is that we're entitled to bring a one-on-one challenge early in the case to look at is this an abstract idea. Here we think it's undisputed based upon Alice Mayo and Bilski and the other precedents set before by this court that this is an abstract idea of target marketing, creating customized proposals. And based upon the precedents of this court, there is no limitation in these patents that has not already been decided by this court as just not invoking an inventive subject matter. And because of that, Your Honor, we ask that this court affirm the decision of the district court. OK. Thank you. Thank you, Mr. Edmonds. You have some rebuttal time. Thank you, Your Honor. First, to Judge Toronto's question about dynamic templates, I refer the court to the 739 patent at column 5, lines 24 through, it's really that paragraph, through lines 45. But the specification talks about picture building blocks used. And because you have this combination of pictures for a finished template, they don't have to be pre-stored because the system can dynamically build the template. And that's something different. What counsel was just describing was a customized proposal that doesn't have this dynamic template. There really is, and that's the thing, is the district court's opinion, and even the appeals in this case, seem to continue to focus on the one patent and then ignoring the 739 claim 1, which really does, as I mentioned, has other limitations that should have been considered by the court. The counsel said that the plaintiff's trying to preempt certain things. Well, one of the problems was the district court did not address preemption, and it shouldn't. With respect to the CWC case, the discussion I heard really suggests, if anything, reversal, because there are some suggestions that maybe some more prior art could be brought up in the future. Maybe the prior jury didn't get the best prior art. But the bottom line is that these are factual issues, and the overlap is substantial, very substantial in terms of especially the 103 and now the 101 issues. Now, 101 wasn't raised in the Hyundai case, but 103 was, and that's where the overlap is. And 103 hasn't changed. And because of that overlap, counsel says, well, we're entitled to early resolution, but not so early that material facts that are out there are just disregarded by the court on a 12B motion. That's one of the things that's inappropriate here. So there was talk about it's a fundamental business practice. Well, there are no facts in the district court's opinion to support that assertion. If anything, the 103 ruling that was affirmed in the Hyundai case debunks that assertion. And the bottom line is it's not a fundamental business practice. What the court, what the district court referenced was somebody having a bunch of static pictures in a Rolodex. And, for example, as we just pointed out, in the 739 patent, you have a dynamic building of a template. You have this dynamism. So even by what the district court was looking at as a business practice— And dynamic means what here? Well, dynamic means that you would take the blocks and you would build it. The district court said, well, I could have a bunch of static pictures and I could just pick which static picture I want based upon it. Dynamic would be that you build it. You can put the product in the environment dynamically. You don't have to go out and take another picture. Or you don't have to have every static picture that they could possibly want. In fact, you probably—they're just—you wouldn't. So the dynamism is just simply something that's not—it's not a fundamental business practice. It's not something that was done. And that's just simply wasn't—the district court just didn't seem to appreciate that. It didn't really address it in its opinion. And then, again, I go back to the lack of factual findings. It just gives this court very little to—that it could uphold on other than just some conclusions that were based upon arguments that were made to the district court. But there's no evidence to support it being a fundamental practice. In fact, it's not. So, you know, the district court's ruling was premature. And there are factually disputed matters, including put in play by the 103 rulings in the Hyundai case, that should have precluded the district court's ruling. And, you know, on those grounds and the other grounds I've discussed, this should be reversed. And the district court should be—either it's simply reversed or at the minimum the district court should be given a chance to consider—to apply the correct test to make sure that the claims are considered as a whole, to make sure the preemptive analysis is done. And then also the district court would have the opportunity to get the full play of relevant evidence that would come into play in terms of the overlap between 103 and 101. I think I'm over my time, so thank you. Thank you, Mr. Edmonds. I thank both counsel. The case is taken under submission.